IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ASSUREDPARTNERS OF OREGON, LLC
d/b/a ALLIANCE INSURANCE GROUP &
ALLIANCE SENIOR LIVING,

        Plaintiff,

    v.

G. SCOTT REESE, SUSAN REESE, CARL
SWAN, ALEX WHIPPLE, S&S
INVESTMENTS MANAGEMENT, LLC,
SHANNON R. HOLT, BRUCE DENSON,
JR., and COBBS ALLEN CAPITAL, LLC,
d/b/a CAC SPECIALTY,

        Defendant.

Case No. 6:22-cv-00673-MC

**OPINION AND ORDER**

**MCSHANE, District Judge**:

Plaintiff AssuredPartners of Oregon, LLC ("AP") brings this action against former employees Carl Swan and Shannon Holt for breach of contract based on the employees' Restrictive Covenant Agreements ("RCA").[1] Pl.'s Second Am. Verified Compl. ¶¶ 148–57, ECF No. 41 ("SAC"). Defendants Carl Swan and Shannon Holt move for partial summary judgment, arguing that section 3 of their agreements is a void and unenforceable noncompetition provision under Oregon law. Swan's Mot. Part. Summ. J., ECF No. 92; Holt's Mot. Part. Summ. J., ECF No. 95. Because section 3 of Swan's and Holt's agreement is an unenforceable noncompetition

---

[1] Plaintiff brings several claims against additional defendants that are outside the scope of this Opinion.

1 – OPINION AND ORDER

agreement, both Defendants' Motions for Partial Summary Judgment (ECF Nos. 92, 95) are GRANTED.

## BACKGROUND

Plaintiff AP is a national insurance brokerage firm, and Defendants Swan and Holt are former AP employees. SAC ¶¶ 1, 3. On October 9, 2015, AP purchased the assets of Alliance Insurance Partners, Inc. ("Alliance") and Quality Risk Management Services, LLC. SAC ¶ 36. Holt was a minority partner at Alliance and AP hired Holt as part of the acquisition. *Id.*; Holt Decl. Supp. Mot. Partial Summ. J. ¶ 2, ECF No. 96. Swan was a producer at Alliance and was hired by AP after the acquisition. Pl.'s Resp. Opp. Swan's Mot. Part. Summ. J. 2, ECF No. 105.

Before the purchase, in August 2015, AP presented a draft employment agreement to the attorneys who represented the Alliance shareholders in the sale. Hustrulid Decl. Opp. Holt ¶ 3, Ex. 2, ECF No. 109. The shareholders, including Holt, were required to execute the final version of the agreement as a condition of the sale. *Id.* In September 2015, Holt was involved in communicating news of the acquisition to Alliance employees and informing the employees, including Swan, that they would be required to sign an RCA as a condition of their employment with AP. *Id.* Ex. 4; SAC ¶ 47. Holt executed her employment agreement on October 8, 2015, the night before the Alliance sale was finalized. Holt Decl. ¶¶ 4–5, Ex. 1.

In December 2015, Swan resigned from AP and was re-hired in June 2017. Swan Decl. Supp. Mot. Partial Summ. J. ¶¶ 3–5, ECF No. 93. On June 12, 2017, AP provided Swan with a written employment offer that conditioned his employment on his execution of an "employment agreement," though no copy of the agreement was attached to the offer letter or otherwise presented to Swan. *Id.* ¶ 4, Ex. 2. Swan began working on June 26, 2017 and executed an RCA

on June 28, 2017. *Id.* ¶ 5–6. Section 3 of Swan's and Holt's agreement is titled as a "non-solicitation and non-interference" clause. Swan Decl. Ex. 3, at 4; Holt Decl. Ex. 1, at 4.

On May 9, 2022, AP terminated Swan's employment and filed this action against Swan and other employees, alleging trade secret misappropriation, conversion, and breach of contract. Swan Decl. ¶ 8, Ex. 4; Compl., ECF No. 1. Swan began working for competitor Cobbs Allen on May 26, 2022. Swan Decl. ¶ 10. On June 3, 2022, AP terminated Holt's employment, filed a Motion for Temporary Restraining Order, and sought leave to amend its complaint to add Holt as a party to this lawsuit. Holt Decl. ¶ 6, Ex. 2; Mot. TRO, ECF No. 34; Mot. Leave File Second Am. Compl. 2–3, ECF No. 32. Holt accepted employment with Cobbs Allen on June 9, 2022. Holt Decl. ¶ 7. AP alleges that Swan and Holt violated the non-solicitation and non-interference provisions of their RCAs by soliciting AP customers and employees, as well as transacting with AP customers. SAC ¶ 153.

## STANDARD OF REVIEW

The Court must grant summary judgment if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The Court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)). The mere existence of some alleged factual dispute

will not defeat an otherwise properly supported motion for summary judgment. *Anderson*, 477 U.S. at 247–48. Rather, the non-moving party must proffer evidence that could reasonably affect the outcome of the suit. *Miller*, 454 F.3d at 988.

## DISCUSSION

AP alleges that Swan and Holt breached section 3 of their RCAs by "soliciting and servicing AP's clients and prospects on their own behalf rather than for AP; [] interfering with AP's relationships with clients, prospects, and vendors . . .; [] participating in a scheme to move AP clients away from AP; [and] soliciting other AP employees." SAC ¶ 153. Swan and Holt each move for partial summary judgment on AP's breach of contract claim, arguing section 3 of their respective agreements is void and unenforceable under Or. Rev. Stat. section 653.295.

### I. Breach of Contract Against Swan

The Court first addresses which state law governs the interpretation of Swan's RCA, followed by the enforceability of section 3 of the RCA.

#### A. Choice of Law

AP insists that Florida law should govern the interpretation of Swan's RCA due to the choice of law provision in section 16 of the agreement.[2] Pl.'s Opp. Swan's Mot. 7; *see also* Hustrulid Decl. Opp. Swan, Ex. 8, at 7, ECF No. 106. Swan argues that, per Or. Rev. Stat. section 15.320(3), interpretation of the RCA is governed by Oregon law because Swan was living and working in Oregon when he assented to the RCA, and he rendered services in Oregon for most of the five years that he worked for AP. Swan's Reply Supp. Mot. Partial Summ. J. 2–5, ECF No. 115. AP responds that section 15.320(3) does not apply because Swan is currently residing in Arizona and is now an Arizona employee. Pl.'s Opp. Swan's Mot. 7–9.

---

[2] Holt's RCA does not contain a choice of law provision.

Federal courts sitting in diversity apply the forum state's choice of law rules. *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 611 (9th Cir. 2010). Or. Rev. Stat. sections "15.300 to 15.380 govern the choice of law applicable to any contract, or part of a contract, when a choice between the laws of different states is at issue." § 15.305 (2021). Under section 15.320(3), Oregon law applies to an employment contract "for services to be rendered primarily in Oregon by a resident of Oregon."

Here, Swan assented to the RCA while living in Oregon. He rendered services for AP in Oregon for nearly five years, from June 2017 until January 2022. *See* Hustrulid Decl. Opp. Swan, Ex. 9. Of the five years Swan worked for AP, he lived in Arizona for less than five months, and he still maintains a residence in Oregon. *Id.* ¶ 12, Ex. 9; Barret Decl. Opp. Swan, Ex. 1, at 9–10, ECF No. 107. When Swan relocated to Arizona, AP considered him a remote employee and confirmed that his move "w[ould] not impact his position with [AP]," signaling that Oregon remained his home base. *See* Hustrulid Decl. Opp. Swan, Ex. 9. For these reasons, section 15.320(3) applies to Swan's agreement, and Oregon law governs the interpretation of that agreement. *See Schedler v. Fieldturf USA, Inc.*, 16-CV-344, 2017 U.S. Dist. LEXIS 233689, at 17–18 (D. Or. May 17, 2017), *adopted*, 2017 U.S. Dist. LEXIS 126111 (D. Or. Aug. 9, 2017) (opining that under section 15.320(3), Oregon courts would find the plaintiff's wage claim governed by Oregon law where the plaintiff "was a resident of Oregon when the parties entered the Employment Agreement, and at the time the parties formed their contract of employment, the parties contemplated that [the plaintiff] would be a resident of Oregon performing services worldwide but based in Oregon.").

5 – OPINION AND ORDER

### B. Section 3 of Swan's RCA

Swan argues that section 3 is void and unenforceable because even though it is labeled a "non-solicitation and non-interference" clause, it is in fact a noncompetition agreement subject to the requirements of Or. Rev. Stat. section 653.295 (2016), requirements that AP failed to meet. Swan's Mot. 7–13. AP maintains that section 3 is not subject to section 653.295's requirements because the restrictions fall within the scope of an exception for non-solicitation agreements.[3] Pl.'s Opp. Swan's Mot. 16–20; *see* Or. Rev. Stat. § 653.295(4)(b).

Under section 653.295(1), "any non-competition agreement entered into between an employer and employee is voidable and may not be enforced by" a court in Oregon unless certain requirements are met, including notice to "the employee in a written employment offer received by the employee at least two weeks before the first day of the employee's employment that a noncompetition agreement is required as a condition of employment." Or. Rev. Stat. § 653.295(1)(a)(A). Section 653.295(4)(b) creates an exception, stating that subsection (1) does not apply to "[a] covenant not to solicit employees of the employer or solicit or transact business with customers of the employer."

Federal courts in Oregon have declined to apply the (4)(b) exception to overbroad non-solicitation agreements—agreements with language that "extends beyond a restriction not to solicit or transact business" with the employer's customers—reasoning that the "overall effect" is to prevent employees from competing with employers. *Naegeli Reporting Corp. v. Petersen*, No. 3:11-1138, 2011 WL 11785484, at *3 (D. Or. Dec. 5, 2011); *see also Aitkin v. USI Ins. Servs., LLC (Aitkin I)*, No. 2:21-CV-00267, 2021 WL 2179254, at *4 (D. Or. May 28, 2021), *aff'd*, No. 21-35497, 2022 WL 1439128 (9th Cir. May 6, 2022). As explained in *Aitkin I*, "a covenant that

---

[3] In 2022, the non-solicitation exception became subsection 653.295(5)(b).

6 – OPINION AND ORDER

prohibits a former employee from 'directly or indirectly' soliciting, diverting, inducing, or servicing business from current or prospective clients 'should be construed as a non-competition agreement.'" 2021 WL 2179254, at *4.

The Oregon Court of Appeals found that a limited noncompete agreement was too broad to meet the (4)(b) non-solicitation exception because the agreement prohibited the defendant, a nurse, from treating any patients who had received her services while she worked for Oregon Psychiatric Partners ("OPP") for two years after her employment ended. *Or. Psychiatric Partners, LLP v. Henry* (*Henry I*), 429 P.3d 399, 405 (Or. Ct. App. 2018). The defendant worked at OPP for 20 months before leaving to open her own clinic. *Id.* at 406. The court reasoned that "the agreement would prevent the defendant from doing business with a person whom she had treated only once on her first day at OPP, regardless of any relationship—or lack thereof—that the patient had with OPP." *Id.* at 405. The court explained that such a "person would not necessarily be a 'customer[] of the employer,'" meaning a person "who would reasonably be expected to return to the employer for purposes of doing business when the employer-employee relationship ended." *Id.* (alteration in original). "Therefore, the agreement as written would restrict competition to a degree not permitted under ORS 653.295(4)(b)." *Id.*

Section 3 of Swan's RCA provides that, for two years following his termination, he may not directly or indirectly "offer, sell, solicit, quote, place, provide, renew, or service any insurance product or service" for any "Restricted Client," or cause Restricted Clients to diminish their business with, or cease or refrain from doing business with AP and its affiliates, subsidiaries, and parent companies. Swan Decl., Ex. 3, at 3–4. Restricted Clients are defined as any client or prospective client of AP and its affiliates, subsidiaries, and parent companies during the two years preceding Swan's termination for which Swan "had material involvement in

proposing, selling, quoting, placing, providing, servicing, or renewing any insurance product or service" or about whom Swan received confidential information. *Id.* at 4.

The Court finds the language in section 3—a prohibition on directly or indirectly soliciting, servicing, or diverting current and prospective clients of AP and its affiliates—too broad in scope to fall under the (4)(b) non-solicitation exception. Namely, the definition of Restricted Clients is broader than persons or entities who would reasonably be expected to return to the employer when the employer-employee relationship ended. Like the agreement in *Henry I*, Swan's RCA applies to clients that Swan may have serviced only one time, as well as individuals and entities that may not have been Swan's direct clients, or even AP's direct clients. The agreement further prohibits Swan from causing current or prospective clients to diminish, cease, or refrain from doing business with AP and its affiliates. *See Aitkin v. USI Ins. Servs. LLC (Aitkin II)*, No. 21-cv-00267, 2022 WL 2158733, at *6 (D. Or. June 15, 2022) ("An employment agreement that prohibits a former employee from inducing insurance policy holders to terminate or replace policies issued by the employer 'falls squarely within the definition of a noncompetition agreement.'"). The language of section 3 effectively prevents Swan from competing with AP, and the Court therefore construes the provision as a noncompetition agreement subject to the requirements of Or. Rev. Stat. section 653.295.

For the RCA to be an enforceable noncompetition agreement under section 653.295, AP must have provided Swan written notice that he was required to sign a noncompetition agreement as a condition of his employment. Or. Rev. Stat. § 653.295(1)(a)(A). The record shows that though AP sent Swan a written employment offer notifying him of an employment agreement, Swan did not receive notice that a noncompetition agreement was a required condition of his employment, and the offer letter did not include a copy of the employment

agreement for his review. Pl.'s Opp. Swan's Mot. 4; Swan Decl. ¶ 4, Ex. 2. AP does not dispute that the employment offer letter did not specify that a noncompetition agreement was required. Lively Decl. Supp. Swan's Reply Ex. 1, at 5, ECF No. 116. Instead, AP argues that the offer letter's reference to an employment agreement was understood by both parties to reference AP's standard RCA, such that the notice requirement was met. Pl.'s Opp. Swan's Mot. 21. The Court is unpersuaded. AP does not cite to any authority supporting its contention that an employee's prior awareness of a noncompetition agreement can be inferred from the circumstances and sufficient to meet the explicit notice requirement under section 653.295(1)(a)(A). Because AP failed to provide written notice to Swan that he would be required to sign a noncompetition agreement, section 3 of Swan's RCA is a voidable agreement.

Next, the Court must decide if Swan took affirmative steps to void his obligations. "[A]n employee who wants to be relieved of what the employee believes to be an unenforceable noncompetition obligation must take affirmative steps to 'avoid' that obligation; otherwise, it remains valid." *Bernard v. S.B., Inc.*, 350 P.3d 460, 464 (Or. Ct. App. 2015); *see also Or. Psychiatric Partners, LLP v. Henry* (*Henry II*), 504 P.3d 1223, 1227 (Or. Ct. App. 2022) ("[I]f an employee never manifests an election to treat a noncompetition agreement as void, *i.e.*, never takes affirmative steps to avoid the obligation, the court should treat the agreement as valid."). "[O]nce an employee elects to treat a noncompetition agreement as void under ORS 653.295(1), the court must treat the agreement as void and unenforceable, *unless* the employer establishes that it is valid and enforceable." *Henry II*, 504 P.3d at 1227–28 (emphasis in original).

Swan insists he took affirmative steps to void section 3 of the RCA. Swan's Mot. 10–13. AP argues that Swan lost his power of avoidance because (1) he attempted to do so after AP had already sought to enforce the RCA by filing this lawsuit and (2) Swan ratified the agreements

just after his termination, foreclosing his right to void them. Pl.'s Opp. Swan's Mot. 23–28; *see also* Swan Decl. ¶ 9, Ex. 5. AP points to other district courts that have found an employee loses his right to void the moment the employer seeks to enforce the agreement. *E.g.*, *Millennium Health, LLC v. Barba*, No. 20-cv-02035, 2021 WL 1254349, at \*7 (D. Or. Apr. 5, 2021), *aff'd*, 2021 WL 4690949 (9th Cir. Oct. 7, 2021); *Brinton Business Ventures, Inc. v. Searle*, 248 F. Supp. 3d 1029, 1035 (D. Or. 2017).

Section 653.295 does not specify a deadline by which an employee must void a noncompetition agreement, and Oregon case law does not resolve the issue. In *Bernard*, the Oregon Court of Appeals stated that because an employee's noncompetition agreement "had not been voided at the time that [the employer] sought to invoke the contract, the agreement was valid and in effect," supporting AP's inference that avoidance cannot occur after an employer initiates enforcement of the contract. 350 P.3d at 465. But more recently, when evaluating the burden of proof under section 653.295, the Oregon Court of Appeals noted that the employee "initially manifested her election [to void her noncompetition agreement] by pleading an affirmative defense," suggesting that an employee may void after the employer's enforcement action. *Henry II*, 504 P.3d at 1230.[4]

Neither case is on point as the timing of avoidance was not an issue before the court. Under the circumstance of this case, the Court finds that Swan took sufficient affirmative steps to void his RCA. AP terminated Swan's employment and sought enforcement of misleadingly labeled covenants all in the same day, before Swan could seek legal counsel, and before he began working for competitor Cobbs Allen. These facts are distinguishable from those of *Millennium*

---

[4] The court expressly "decline[d] to speculate as to the different ways—or the "best" way—that an employee might manifest an election to treat a noncompetition agreement as void, especially because that is an issue that neither party has addressed." *Id.*

*Health*, *Searle*, and *Bernard*, where the employees resigned from their jobs and their employers responded by taking action to enforce the employees' noncompetition agreements. There, the employees had ample opportunity to consider their resignations and seek counsel regarding their restrictive covenants, which necessarily included an opportunity to void their noncompetition agreements before they began actively competing with their employer. Here, AP foreclosed any opportunity for Swan to void his RCA prior to AP's action seeking enforcement. The Court therefore finds that the emails from Swan's attorney on May 13 and May 31 were sufficient affirmative steps to avoid his obligations under section 3 of the RCA. *See* Lively Decl. Supp. Swan's Mot. ¶¶ 3, 5, Exs. 2, 4, ECF No. 94.

    The Court further disagrees with AP that Swan ratified section 3 of the RCA before he had an opportunity to seek legal counsel on the covenant's enforceability. Swan's generalized statement that he intended to "honor [his] AP contract, covenants, and requirements"—made days after his termination and before he obtained counsel—is not an "express ratification" of section 3 of the RCA, especially where the RCA is a mislabeled noncompetition agreement.

    Because Swan took affirmative steps to void section 3 of the RCA, the provision is unenforceable.

## II.    Breach of Contract Against Holt

    Like Swan, Holt argues that section 3 of her RCA is void and unenforceable because even though it is labeled a "non-solicitation and non-interference" clause, it is in fact a noncompetition agreement subject to the requirements of Or. Rev. Stat. section 653.295 (2016), requirements that AP failed to meet. Holt's Mot. 6–10. AP maintains that section 3 is not subject to section 653.295's requirements because the statute applies only to noncompetition agreements made in the context of an employment relationship or contract, and Holt's agreement was

executed in the context of AP's acquisition of Alliance. Pl.'s Opp. Holt's Mot. Part. Summ. J. 8–10, ECF No. 108. AP argues in the alternative that even if Holt's RCA was made in the context of an employment relationship, the restrictions fall within the scope of the 653.295(4)(b) exception for non-solicitation agreements.[5] *Id.* at 10–11.

The Court finds section 3 of Holt's RCA is a noncompetition agreement made in the context of an employment relationship. Holt executed a separate purchase agreement as part of the Alliance acquisition that had its own set of restrictive covenants, where Holt was referred to as a "Principal." Hustrulid Decl. Opp. Holt Ex. 1. In contrast, the RCA at issue refers to Holt as an "Employee" and sets out the terms of her employment and compensation. Holt Decl. ¶ 4, Ex. 1. Like section 3 of Swan's RCA, section 3 of Holt's RCA is too broad to fit under the (4)(b) exemption for non-solicitation agreements. Section 3 prohibits Holt from directly or indirectly soliciting or servicing "Restricted Clients," or causing Restricted Clients to cease or refrain from doing business with AP and its affiliates for two years following Holt's termination. *Id.* at 4. Restricted Clients include any client of AP's and its affiliates that Holt either "had some involvement in proposing, selling, quoting, placing, providing, servicing, or renewing any insurance product or service" or about whom Holt received confidential information. *Id.* The above definition also applies to prospective clients of AP's and its affiliates "within the three (3) months immediately preceding" Holt's termination. *Id.* at 5.

For the same reasons outlined above regarding Swan's RCA, the Court finds the language in section 3 of Holt's RCA—a prohibition on directly or indirectly soliciting, servicing, or diverting current and prospective clients of AP and its affiliates—too broad in scope to fall under

---

[5] AP also points to an "avoidance of doubt" clause in Holt's RCA to argue the parties' specific intent that the section 4(b) exemption would apply to section 3. Pl.'s Opp. Holt's Mot. 11. The Court disagrees that employers and employees can "intend" to exempt a contract from section 653.295's requirements.

the (4)(b) non-solicitation exception. Though the definition of Restricted Clients differs slightly than Swan's RCA, limiting prospective clients to only those within three months preceding Holt's termination, it applies to any client or prospective client which Holt had "some involvement" in servicing. *Id.* The definition is still broader than persons or entities who would reasonably be expected to return to the employer when the employer-employee relationship ended. *See Henry I*, 429 P.3d at 405. Holt's RCA also prohibits Holt from causing current or prospective clients to diminish, cease, or refrain from doing business with AP and its affiliates, further suggesting it is a noncompetition agreement. *See Aitkin II*, 2022 WL 2158733, at *6. The Court therefore construes the provision as a noncompetition agreement subject to the requirements of Or. Rev. Stat. section 653.295.

Like Swan, Holt maintains that she did not receive a written employment offer informing her that a noncompetition agreement was a required condition of her employment with AP. Holt Decl. ¶ 4. AP asserts that the notice requirement was met because AP provided the attorney who was representing the Alliance partners in the acquisition with notice and a copy of the agreement seven weeks before the sale was finalized. Pl.'s Opp. Holt's Mot. 13–14. Holt insists that she did not see a copy of her RCA until October 8, 2015—the day before the Alliance sale was finalized. Holt Decl. ¶ 4. Holt argues that even if she had seen a copy of her RCA two weeks prior to the sale, the notice requirement still would not have been met because the RCA "expressly disclaims that it is noncompetition agreement and thus cannot be construed as notice that a noncompetition agreement is a required condition of employment." Holt's Reply Supp. Mot. Part. Summ. J. 8, ECF No. 117.

AP has not produced any evidence to show that Holt was informed directly and in writing, at least two weeks before her start date, that she would be required to execute a

13 – OPINION AND ORDER

noncompetition agreement as a condition of her employment with AP. Holt's RCA is therefore a voidable agreement, and Holt took timely and affirmative steps to void her obligations. As with Swan, AP cannot foreclose Holt's ability to void the agreement by simultaneously terminating Holt and seeking to enforce her RCA. Holt's attorney communicated Holt's intent to void section 3 of the RCA on June 15, 2022, twelve days after AP terminated Holt's employment and joined her as a party to this lawsuit.[6] Lively Decl. Supp. Holt's Mot. ¶ 2, Ex. 1, ECF No. 97. Section 3 of Holt's RCA is therefore void and unenforceable.

## **CONCLUSION**[7]

For the above reasons, Defendant Swan's Motion for Partial Summary Judgment (ECF No. 92) and Defendant Holt's Motion for Partial Summary Judgment (ECF No. 95) are both GRANTED.

**IT IS SO ORDERED.**

DATED this 30th day of December 2022.

_____/s/ Michael McShane_____
Michael McShane
United States District Judge

---

[6] The Court does not decide if Holt's opposition to AP's Motion for Temporary Restraining Order (ECF Nos. 34, 54) was sufficient to manifest her intent to void her obligations. *See* Holt's Mot. 10; Lively Decl. Supp. Holt's Mot. ¶ 2, Ex. 1.

[7] Because the agreements are unenforceable under Oregon statute, the Court need not decide if the agreements are reasonable restraints on trade under the common law.

14 – OPINION AND ORDER