**Arden J. Olson, OSB #870704**
arden.j.olson@harrang.com
**Randolph Geller, OSB #030610**
randy.geller@harrang.com
**Julian Marrs, OSB #154743**
julian.marrs@harrang.com
HARRANG LONG P.C.
497 Oakway Road, Suite 380
Eugene, OR 97401
Telephone:    (541) 485-0220
Facsimile:    (541) 686-6564
Of Attorneys for Defendants
G. Scott Reese, Susan Reese and
S&S Investments Management, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **ASSUREDPARTNERS OF OREGON, LLC, d/b/a/ ALLIANCE INSURANCE GROUP & ALLIANCE SENIOR LIVING,**<br><br>Plaintiff,<br><br>vs.<br><br>**G. SCOTT REESE, SUSAN REESE, CARL SWAN, ALEX WHIPPLE, S&S INVESTMENTS MANAGEMENT, LLC, SHANNON R. HOLT, BRUCE DENSON, JR., and COBBS ALLEN CAPITAL, LLC, d/b/a CAC SPECIALTY,**<br><br>Defendants. | Case No. 6:22-CV-00673-MC<br><br>**REESE DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S THIRD AMENDED COMPLAINT** |

Defendants G. Scott Reese, Susan Reese, and S&S Investments Management, LLC (the "Reese Defendants") hereby admit, deny, and otherwise answer the Third Amended Complaint ("Complaint") filed by AssuredPartners of Oregon, LLC, d/b/a Alliance Insurance Group &

Page 1 –   **REESE DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S THIRD AMENDED COMPLAINT**

Alliance Senior Living ("AP") as follows:

## ANSWER

1. The Reese Defendants admit the allegations of Paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 14, 36, 94, and 95 of the Complaint.

2. The Reese Defendants deny the allegations of Paragraphs 29, 32, 86, 87, 88, 91, 92, 93, 96, 97, 98, 101, 102, 103, 119, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 173, 182, 183, 184, 186, 188, 189, 190, 192, 194, 195, 196, 197, 198, 199, and 200 of the Complaint.

3. The Reese Defendants are without information sufficient to form a belief as to the truth of Paragraphs 15, 18, 20, 28, 35, 38, 39, 40, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 84, 85, 89, 90, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 168, 169, 170, 172, 174, 175, 176, 177, 178, 179, 180, and 187 of the Complaint, and on that basis deny the same

4. With respect to Paragraph 12, the Reese Defendants admit that the insurance business is competitive and are without information sufficient to form a belief as to the truth of the remainder and on that basis deny the same.

5. With respect to Paragraph 13, the Reese Defendants admit that Scott Reese and Susan Reese each entered into a Restrictive Covenant Agreement ("RCA") with AP; deny that AP has uniformly required such agreements from all employees; and deny the remainder.

6. With respect to Paragraphs 16, 17, and 19, the Reese Defendants assert that the RCAs and AP's Handbook speak for themselves and deny any characterization of those documents not evident in the language of those documents.

7. With respect to Paragraph 21, the Reese Defendants admit that after the sale to AP they continued to have access to some AP business information, but significantly less than they had with Alliance prior to the sale; admit that they were paid for their services; are without

information sufficient to form a belief as to the truth of the allegation concerning AP's reliance and on that basis deny the same; and deny any remaining allegation.

8. With respect to Paragraph 22, the Reese Defendants admit that "captive" denotes an insurance company wholly owned and controlled by its insured for the purpose of managing the insured's risks; are without information sufficient to form a belief as to the truth of the second sentence and on that basis deny the same; and deny any remaining allegations.

9. With respect to Paragraph 23, the Reese Defendants are without knowledge or information sufficient to form a belief as to the truth of what AP did with respect to captive manager Strategic Risk Solutions ("SRS") other than through Scott Reese, and therefore deny the same; admit that Scott Reese contracted with three captive insurers managed by captive manager SRS (none of which were AP customers) to provide insurance consulting services that he believed at the time were appropriate under the law and under his obligations to AP because those services were outside the scope of what he could provide through his insurance producer's license affiliated with AP on account of direction from the Oregon Division of Insurance, now known as the Division of Financial Regulation ("DOI") described below; allege that SRS was identified by Scott Reese as an appropriate captive manager to assist AP's customers by contacting AP's risk manager Mark Holt, who surveyed the market and identified SRS to Scott Reese as a good fit for AP's customers; and deny any remaining allegations.

10. With respect to Paragraph 24, the Reese Defendants are without knowledge or information sufficient to form a belief concerning what AP considers a "substantial amount of work" and therefore denies the same; are unaware what AP asked of SRS in April 2022; and deny any remaining allegations.

11. With respect to Paragraphs 25 and 26, the Reese Defendants admit that in 2021 three AP customers were having trouble finding affordable coverage, in two cases, or any coverage, in one case, as follows:

    a. The first customer had a $1 million retention that it had been self-insuring, with AP writing coverage above that retention to a $10 million limit. They

Page 3 –   **REESE DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S THIRD AMENDED COMPLAINT**

        indicated to Scott Reese that, instead of self-insuring the $1 million retention, they wanted to create a captive insurer and cover that risk (which had not been insured through AP in any event), but also to solve affordability problems in other aspects of its business by adding coverage to the captive.

    b.    The second customer had previously utilized a captive insurer in a down market and similarly had decided to use a captive to address their problem finding affordable coverage.

    c.    The third customer had experienced massive COVID losses as to PL/GL risks, had exhausted its policy coverage on those risks, the carrier refused to renew, and Scott Reese was informed that no other carrier that AP could find would renew those risks. Because AP was unable to find insured coverage, Scott Reese introduced them to the solution of a captive that the other two customers were implementing.

In all three cases, Mr. Reese's goal was to retain the customer relationships for AP as to the lines of insurance that AP could sell them, and in all three cases that strategy succeeded. The background to Mr. Reese's choices on how to accomplish that goal was an interaction with the Oregon DOI in approximately 2008. Alliance Insurance Group, then owned in part by Scott Reese, had written insurance coverage for Sunwest Management Inc. ("Sunwest"), which was the largest provider of assisted living to seniors in the nation at that time. Sunwest was using a non-Oregon-admitted captive insurer as part of its risk management strategies, and asked Scott Reese to certificate its professional and general liability coverage under the Alliance-issued certificates, which Scott Reese did as an accommodation to Sunwest as part of its writing the remaining coverages through Alliance. Not long after that, Alliance's Portland and Eugene offices were raided by law enforcement officers and by the DOI, looking for evidence of wrongdoing by Alliance that did not exist. Upon winding up that series of interactions, Scott Reese was advised by the chief enforcement officer of the DOI that providing a certificate for Sunwest's captive, which was not admitted or regulated in Oregon, was a violation of Scott

Page 4 –    **REESE DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S THIRD AMENDED COMPLAINT**

Reese's license as an insurance producer and, although the DOI acknowledged that the circumstances did not warrant taking action against Mr. Reese at the time, he should understand that he never again could use his producer's license to represent or certificate a non-admitted captive insurer, although under his insurance consulting license he could advise companies who used captives, explicit direction which he never forgot. For over a decade thereafter, Mr. Reese had nothing to do with captive insurers. Mr. Reese undertook to consult for the three captives described above in a manner that implemented the DOI's instructions, in order to prevent allowing a competitor an opportunity to solve the customer's problem and thereby to retain the remainder of those customers' business for AP. The Reese Defendants deny that any deceit was intended or implemented (other AP staff assisted, including in particular Yvonne Wiltsie and Chris Zumhoffe, who were informed what was happening and of Scott Reese's reason for making those choices, including minimizing the participation of staff who had no insurance consulting license), and deny that Scott Reese's actions were driven by self-interest.

12. With respect to Paragraph 27, the Reese Defendants admit that Whipple and Swan knew of the circumstances with the three captives described above; deny that there was a "diversion of fees" from AP to Scott Reese or S&S; admit that Whipple was copied on the email described; deny that Swan "recruited prospects as candidates for captives that could generate fees for Scott"; and deny any remaining allegation.

13. With respect to Paragraph 30, the Reese Defendants deny that Susan Reese had any knowledge of the captive insurers when the agreements were made or participated in Scott Reese's actions and deny any remaining allegations.

14. With respect to Paragraph 31, the Reese Defendants admit that on May 9, 2022, AP terminated the employment of Scott Reese, Susan Reese, Swan, and Whipple without notice, without just cause, and without any opportunity by the Reese Defendants to respond to the allegations stated in AP's Complaint or in AP's May 9, 2022, complaint. The Reese Defendants assert that Scott Reese and Susan Reese were part of one of AP's top sales teams nationwide, having since the sale of the business to AP been the leading factor in increasing AP's annual

Page 5 –   **REESE DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S THIRD AMENDED COMPLAINT**

revenues from approximately $9 million to over $20 million; deny that Scott Reese or that Susan Reese violated their RCAs, violated AP policy in any material way, or violated any state or federal law; and deny all remaining allegations.

15. With respect to Paragraph 33, the Reese Defendants deny that AP prior to May 9, 2022, questioned Scott Reese's handling of company expenses; deny that AP had a good faith basis to terminate Scott Reese or Susan Reese over any such issues; admit that Scott Reese may in the rush of business have made some good faith mistakes in this area; deny that Susan Reese took any action to cause AP to pay personal expenses as company expenses; and deny any remaining allegations.

16. With respect to Paragraph 34, the Reese Defendants admit that, in response to AP's concerns about entitlement to the consulting fees from the three customers described in Paragraph 11, all of those fees ($785,498.03, which had been paid to S&S and had not been distributed to anyone) were paid into this Court in order that the Court can determine how those funds should be distributed; deny that there was any "scheme to steal fees from AP"; and deny any remaining allegations.

17. With respect to Paragraph 37, the Reese Defendants deny that there was a "scheme [by Scott Reese] to divert fees in connection with captive insureds"; are without knowledge or information sufficient to form a belief as to whether Swan and Whipple had as of May 9, 2022, "decided to leave AP and had been planning to resign" and therefore deny the same; and deny any remaining allegations.

18. With respect to Paragraph 41, the Reese Defendants admit that Swan, Whipple, and Holt have been hired by CAC and are without knowledge or information sufficient to form a belief as to the remaining allegations and therefore deny the same.

19. With respect to Paragraph 62, the Reese Defendants admit that on May 9, 2022, AP notified Scott Reese and Susan Reese that their access to AP's systems had been disabled, that they were instructed not to attempt to access them, and that they were to return AP

equipment; are without knowledge or information sufficient to form a belief as to the truth of the allegations relating to Swan and Whipple; and deny any remaining allegations.

20. With respect to Paragraph 100, the Reese Defendants deny that AP has met all of its obligations to Scott Reese and to Susan Reese; allege in particular that AP failed to comply with its contractual obligation of good faith and fair dealing; are without knowledge or information sufficient to form a belief as to whether AP met all of its obligations to any other defendant, and on that basis deny the same; and deny any remaining allegations.

21. With respect to Paragraph 120, the Reese Defendants admit that AP believes it has trade secrets and other confidential and competitively sensitive information; admit that Scott Reese and Susan Reese had and have contractual obligations not to use or disclose certain of the information AP believes to fall into those categories; deny that Scott Reese and Susan Reese were or are fiduciaries with respect to AP; are without knowledge or information sufficient to form a belief as to what AP believes fall into those categories; and deny any remaining allegations.

22. With respect to Paragraph 121, the Reese Defendants admit that defendant S&S had imputed knowledge of that which Scott Reese and Susan Reese knew; are without knowledge or information sufficient to form a belief as to what CAC knew or had reason to know; and deny any remaining allegations.

23. To the extent, if any, that the foregoing admissions, denials, and responses in Paragraphs 1 through 22 do not fully reflect the admissions, denials, and responses in the Reese Defendants' Answer to Plaintiff's Second Amended Verified Complaint, those admissions, denials, and responses are incorporated by reference as if fully set forth here, except to the extent specifically modified by Paragraphs 1 through 22 above.

24. With respect to Paragraphs 83, 99, 118, 148, 167, 171, 181, 185, 191, and 193, of the Complaint, the Reese Defendants incorporate by reference their admissions, denials, and answers above to the allegations in the Third Amended Complaint.

25. Any further allegations of the Complaint that have not been admitted are denied.

Page 7 –   **REESE DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S THIRD AMENDED COMPLAINT**

## AFFIRMATIVE DEFENSES

FOR FURTHER ANSWER by way of affirmative defense, the Reese Defendants state:

### FIRST AFFIRMATIVE DEFENSE
### (Alleged Trade Secrets Known or Readily Ascertainable)

26. AP's claims are barred in part because some of that which AP claims to constitute trade secrets are known or readily ascertainable by any reasonably skilled person in the industry.

### SECOND AFFIRMATIVE DEFENSE
### (Acts/Omissions of Others)

27. AP's damages, if any, were caused by its own acts or omissions, or the acts or omissions of persons other than the Reese Defendants.

### THIRD AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

28. AP's alleged damages are barred in whole or in part by AP's failure to take reasonable steps to mitigate them.

### FOURTH AFFIRMATIVE DEFENSE
### (No Irreparable Harm)

29. AP's Eleventh Claim for Relief is unavailable against the Reese Defendants because AP can demonstrate no irreparable harm to AP on account of any action or omission of the Reese Defendants.

### FIFTH AFFIRMATIVE DEFENSE
### (Illegal Contracts)

30. Plaintiff's Second Claim for Relief for breach of contract fails because the RCAs with Scott Reese and Susan Reese attached to the Complaint are illegal contracts in violation of ORS 653.295, as this Court ruled in January 2023 with respect to defendants Swan and Holt.

### SIXTH AFFIRMATIVE DEFENSE
### (No Fiduciary Duties Owed)

31. Plaintiff's Third Claim for Relief for breach of fiduciary duties fails because Plaintiff is an LLC and none of the Reese Defendants was a member-manager to which a fiduciary relationship applied.

## COUNTERCLAIMS

BY WAY OF COUNTERCLAIM the Reese Defendants further allege:

### FIRST COUNTERCLAIM
### (Defamation of Scott Reese)

32. Defendant Scott Reese incorporates by reference the responses in paragraphs 1 through 31 above.

33. On May 9, 2022, AP terminated Scott Reese, effective immediately. AP did not interview Mr. Reese about any of the alleged misconduct described above prior to his termination.

34. On information and belief, on or about May 9, 2022, AP management sent all employees an email invitation to join a Zoom call; the invitation included all staff members, most of whom attended the call. AP's Regional President, Greg Van Ness, and AP's Agency President, Cassondra Hustrulid, spoke on the Zoom call and within the scope of their employment with AP. During the call, Mr. Van Ness stated that Mr. Reese was terminated for stealing revenue from AP and/or taking things that did not belong to him. Mr. Van Ness stated that Mr. Reese is a bad person and had engaged in nefarious conduct at AP. Mr. Van Ness told the staff about the lawsuit and about how to find it, a lawsuit in which AP stated that Mr. Reese was "stealing" and was engaged in "theft."

35. AP's statements about Mr. Reese constituted defamation per se, were false, and would have been demonstrated to be false had AP reasonably inquired of Mr. Reese prior to making the defamatory statements.

36. The false statements made by Mr. Van Ness were made with malice and reckless disregard for their truth or falsity and were not privileged. The purpose of the false statements was to discredit Mr. Reese to AP's employees, to harm Mr. Reese's business reputation, to divert attention from the failures of AP's current management, and to prevent Mr. Reese from being able to secure future employment in the insurance industry.

37. As a result of the false statements, Mr. Reese has suffered general damages, in an

Page 9 –   REESE DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S THIRD AMENDED COMPLAINT

amount exceeding $2 million to be proven at trial. No proof of special damages is required.

## SECOND COUNTERCLAIM
### (Defamation of Susan Reese)

38. Defendant Susan Reese incorporates by reference the responses in paragraphs 1 through 37 above.

39. On May 9, 2022, AP terminated Susan Reese, effective immediately. AP did not interview Ms. Reese about any of the alleged misconduct prior to her termination.

40. On information and belief, on or about May 9, 2022, AP management sent all employees an email invitation to join a Zoom call; the invitation included all staff members, most of whom attended the call. AP's Regional President, Greg Van Ness, and AP's Agency President, Cassondra Hustrulid, spoke on the Zoom call and within the scope of their employment with AP. During the call, Mr. Van Ness stated that Ms. Reese was terminated for stealing revenue from AP and or taking things that did not belong to her. Mr. Van Ness stated that Ms. Reese is a bad person and had engaged in nefarious conduct at AP. Mr. Van Ness told the staff about the lawsuit and about how to find it, a lawsuit in which AP stated that Ms. Reese was "stealing" and was engaged in "theft."

41. AP's statements about Ms. Reese constituted defamation per se, were false, and would have been demonstrated to be false had AP reasonably inquired of Ms. Reese prior to making the defamatory statements. Without limiting the generality of the foregoing, Ms. Reese had nothing to do with the actions described in Paragraphs 22 through 34, 101, 123 through 124, 127, 130 through 131, 186 through 189, and 195 through 197 of the Complaint, facts that reasonable investigation would have uncovered had AP cared to ascertain the facts.

42. The false statements made by Mr. Van Ness were made with malice and reckless disregard for their truth or falsity and were not privileged. The purpose of the false statements was to discredit Ms. Reese to AP's employees, to harm Ms. Reese's business reputation, to divert attention from the failures of AP's current management, and to prevent Ms. Reese from being able to secure future employment in the insurance industry.

43.   As a result of the false statements, Ms. Reese has suffered general damages, in an amount exceeding $2 million to be proven at trial. No proof of special damages is required.

### THIRD COUNTERCLAIM
### (Declaratory Judgment on Entitlement to Captive Consulting Fees)

44.   Defendants Scott Reese and S&S incorporate by reference the responses in paragraphs 1 through 43 above.

45.   AP has asserted a right to the consulting fees described in Paragraphs 11 and 16, which amounted to $785,498.03. Those fees were paid to S&S pursuant to contracts with three captive insurers for consulting services and are currently deposited with the Court pending resolution of AP's claim of entitlement. Mr. Reese had the good faith belief in entering into those contracts that the Oregon Insurance Division would not have permitted those consulting services in connection with those captives through his insurance producer license affiliated with AP because of limitations related to insurance producer licenses and believed in good faith that it was nevertheless permissible for Mr. Reese to offer those services under his insurance consulting license.

46.   Had those moneys been lawfully earned by AP based on Mr. Reese's production, Mr. Reese would have been entitled to be paid by AP 40% of those fees paid in the first year and 30% of those fees paid in the second year. The total that AP would have paid Mr. Reese with respect to the $785,498.03 would have been $288,268.21.

47.   Scott Reese and S&S therefore seek a declaratory judgment from this Court concerning the parties' entitlement to those fees and to disburse them under 28 U.S.C. § 2402 to the appropriate party or parties in accord with the Court's declaration.

### FOURTH COUNTERCLAIM
### (Attorney Fees)

48.   The Reese Defendants incorporate by reference the responses in paragraphs 1 through 47 above.

49.   The Reese Defendants are each entitled to an award of their attorney fees pursuant

to ORS 20.096(1) on the claim for breach of contract.

50. The Reese Defendants are further entitled to an award of attorney fees under the Oregon Trade Secrets Act, ORS 646.467(1) and the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b)(3)(d), when a claim is made in bad faith. AP made its trade secrets claims against each of the Reese Defendants in bad faith and, although it has now dropped those claims from its Third Amended Complaint, the Reese Defendants incurred attorney fees defending against those claims.

## FIFTH COUNTERCLAIM
### (Wrongful Discharge)

51. The Reese Defendants incorporate by reference the responses in paragraphs 1 through 50 above.

52. At all material times, the public policy of Oregon has prohibited an employer from retaliating against an employee who engages in protected concerted activity.

53. Throughout 2021 and into 2022, Scott Reese and Susan Reese engaged in protected concerted activity by discussing and informing AP management of understaffing and poor working conditions at AP, thereby fulfilling a societal obligation and exercising an important job-related right.

54. Scott Reese's and Susan Reese's protected concerted activity was a substantial factor in AP's decision to discharge them.

55. Scott Reese and Susan Reese sustained damages, in amounts to be proven at trial, as a result of their respective discharges.

## JURY TRIAL DEMAND

The Reese Defendants reassert their demand for trial by jury in this matter on each claim in this matter to which each of them may have that right.

## PRAYER FOR RELIEF

Having fully answered AP's Complaint, the Reese Defendants ask that this Court:

1. Deny AP the relief that it seeks;

2. Dissolve the Preliminary Injunction to which the Reese Defendants stipulated;

3. Enter judgment against AP and in favor of Scott Reese and Susan Reese under their counterclaims for defamation, in amounts exceeding $2 million each as may be determined by the jury;

4. Enter judgment awarding Scott Reese the $785,498.03, plus interest, currently on deposit with the Court;

5. Award each of the Reese Defendants their costs and reasonable attorney fees pursuant to ORS 20.096(1) as to the contract claim;

6. Award each of the Reese Defendants their costs and reasonable attorney fees pursuant to ORS 646.467(1) as to the Oregon Trade Secrets Act claim and under 18 U.S.C. § 1836(b)(3)(d) as to the Defend Trade Secrets claim; and

7. Award the Reese Defendants such other and further relief as may be just and equitable in the circumstances.

DATED this 17th day of February, 2023.

HARRANG LONG P.C.

By: ___s/ Arden J. Olson___
Arden J. Olson, OSB #870704
arden.j.olson@harrang.com
Of Attorneys for Defendants
G. Scott Reese, Susan Reese and
S&S Investments Management, LLC